# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re,<br><br>JK Harris & Company, LLC,<br><br>Debtor(s). | C/A No. 11-06254-JW<br><br>Adv. Pro. No. 12-80176-JW<br><br>Chapter 7 |
| Michelle L. Vieira, as Chapter 7 Trustee for JK Harris & Company, LLC; JK Harris Small Business Services, LLC; and JKH Holding Co., LC,<br><br>Plaintiff(s),<br><br>v.<br><br>John K. Harris,<br><br>Defendant(s). | **ORDER** |

This matter comes before the Court on the Motion for Summary Judgment ("Motion") filed by Michelle L. Vieira, as Chapter 7 Trustee ("Trustee") for JK Harris & Company, LLC ("JK Harris"), JK Harris Small Business Services, LLC ("SBS"), and JKH Holding Co., LC ("Holding") (collectively, the "Debtors"). Defendant John K. Harris ("Defendant") filed an Objection, *pro se*, to the Motion. Pursuant to Fed. R. Civ. P. 52, which is made applicable to this adversary proceeding by Fed. R. Bankr. P. 7052, the Court makes the following findings of fact and conclusions of law:[1]

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any conclusions of law constitute findings of fact, they are so adopted. Furthermore, to the extent that it is found that this Court lacks authority to enter its order herein as a final order, the Court submits this determination as proposed findings of fact and conclusions of law to the U.S. District Court.

## FINDINGS OF FACT[2]

1.      On October 7, 2011, the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2.      The bankruptcy cases of the Debtors are being jointly administered pursuant to an order entered October 19, 2011.

3.      On January 10, 2012 ("Conversion Date"), the bankruptcy cases of the Debtors were converted from Chapter 11 to Chapter 7 of the Bankruptcy Code, and the Trustee was appointed.

4.      Prior to filing bankruptcy, JK Harris was a manager-managed limited liability company, and Defendant was named as a manager of JK Harris.  Defendant was also an owner of JK Harris and of Holding, which was JK Harris' parent company.  Defendant owned approximately 23.8% of the equity interest in Holding and approximately 61.905% of the voting interest.  He thus controlled Holding which in turn controlled JK Harris.  Holding owned a 99% equity interest and voting interest in JK Harris.  Defendant owned the remaining 1% of the equity interest in JK Harris and the remaining 1% of the voting interest.

5.      Defendant was in complete control of the Debtors at all times relevant hereto.

6.      From January 2005 to August 2007, Defendant caused JK Harris to lend him $2,578,696.11 (the "Loan").

7.      The Loan is reflected in the books and records of JK Harris and designated as a loan rather than as a distribution or as salary.

---

[2]      The facts set forth in paragraphs 1 through 13 are undisputed.

8.      At the continued Meeting of Creditors held on June 6, 2012, Defendant testified that he borrowed approximately $2.6 million from JK Harris and stated that he believed $2,578,696.11 was the accurate amount borrowed from JK Harris.

9.      According to the books and records of JK Harris, the loan accrued compound interest at the prime rate quoted in the Wall Street Journal, determined as of the first business day of each month.

10.      The interest is accrued in the JK Harris books and records through August 2007.

11.      In 2006 and 2007, Holding redeemed Defendant's equity stock in Holding and applied the redemption to the Loan.

12.      On or about May 10, 2012, the Trustee notified Defendant that she was demanding payment of the total indebtedness pursuant to the Loan.

13.      On or about May 29, 2012, at Defendant's request, the Trustee sent Defendant a verification of the debt, including the method of calculation of the balance, showing that the total amount due on the Loan as of May 31, 2012 was $3,246,609.28.

<u>PROCEDURAL BACKGROUND</u>

14.      On June 26, 2012, the Trustee commenced this adversary proceeding by filing a Complaint seeking a money judgment in the amount of $3,246,609.28 plus interest accrued since May 31, 2012, pursuant to a state law cause of action for breach of contract, based upon Defendant's failure to make payment of the Loan upon demand by the Trustee.

15.      On July 23, 2012, Defendant filed an Answer to the Complaint.   In his Answer, Defendants admits all of the allegations of the Complaint, except he asserts that the

Loan was previously satisfied in full through the redemption of equity stock in Holding in 2006 and 2007 and thus he is no longer liable for that debt.

16.     On August 8, 2012, the Trustee obtained a judgment against Defendant in a separate contested adversary proceeding, Adv. Pro. No. 12-80152 (the "Prior Litigation"), on her claims for breach of fiduciary duty and unlawful distributions in violation of S.C. Code Ann. §§ 33-44-406 and 33-44-407.

17.     On September 20, 2012, the Trustee filed the Motion.

18.     Defendant filed an Objection to the Motion on October 9, 2012.

<u>ARGUMENTS OF THE PARTIES</u>

The Trustee seeks summary judgment on the sole cause of action in the Complaint, which seeks a money judgment in the amount of $3,246,609.28 plus interest accruing since May 31, 2012, based upon Defendant's alleged breach of contract.  Since Defendant admitted the remaining allegations of the Complaint in his Answer, the Court is left to determine whether a genuine issue of material fact exists regarding the only element of the Trustee's cause of action in dispute: whether Defendant failed to perform his obligation to pay the Loan.  While the Trustee acknowledges that Defendant attempted to satisfy the majority of the Loan through Holding's redemption of Defendant's stock in Holding, she asserts that the satisfaction through the stock redemption was invalid because the Debtors were insolvent at the time of the redemption and therefore the stock had no value.  She further argues that the stock redemption had no benefit to JK Harris because Holding redeemed stock in Holding, thus there was no repayment of the Loan.

Defendant argues that the issue of whether Debtors were insolvent at the time of the stock redemption is a material factual dispute that should bar summary judgment in the

Trustee's favor, because if Holding was solvent at the time of the stock redemption, this transfer would have been sufficient to satisfy his performance obligations and no amount would remain due on the Loan. He argues that while Debtors were insolvent based upon the book value of the assets minus the liabilities of these companies, they were not insolvent based upon the fair market value of the assets minus the liabilities. In support of this argument, he attached to his Objection a letter from Jacobson Partners, an independent investor, dated December 7, 2007 ("Jacobson Letter"), which purports to be a proposal for Jacobson Partners' investment in JK Harris and provides an estimate of the equity value of JK Harris in the amount of $2,000,000 as of that date. The Jacobson Letter indicates that it is a "non-binding indication of interest" for an investment in JK Harris, that "[n]othing herein in intended to be binding on either party," and that any transaction would be subject to negotiation and further due diligence. Defendant admits that the transaction discussed in the Jacobson Letter was never completed. In response to the Trustee's argument that Holding's redemption of its own stock had no benefit to JK Harris, he argues that as the owner of 99% of the equity stock in JK Harris, Holding could accept equity in itself in exchange for a debt owed to JK Harris.

## **CONCLUSIONS OF LAW**

I.      Summary Judgment Standard

Summary judgment is governed by Fed. R. Civ. P. 56, which is made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056. Rule 56(a) provides that summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. "In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be

believed and all justifiable inferences must be drawn in his favor.  However, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."   Sauls v. Wyeth Pharmaceuticals, Inc., 846 F.Supp.2d 499 (D.S.C. 2012) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. County of Chesterfield, 95 F.3d 1263, 1265 (4th Cir. 1996).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). Once that showing has been made, the burden shifts to the non-moving party to "go beyond the pleadings and set forth affidavits, depositions, answers to interrogatories or admissions to show specific facts indicating a genuine issue for trial." Hovis v. Gilliam et al. (In re Marine Energy Systems Corp.), C/A No. 97-01929-JW, Adv. Pro. No. 08-80017-JW, slip op. (Bankr. D.S.C. Mar. 24, 2009) (citing Campbell v. Capital One Bank (In re Broughton), C/A No. 99-06953-W, Adv. Pro. No. 00-80143, slip op. at 4 (Bankr. D.S.C. Mar. 20, 2001)).  A party may not rely on the mere allegations contained in their pleadings but instead must come forward with specific facts once a party moving for summary judgment meets its initial burden of demonstrating an absence of material fact and an entitlement to judgment as a matter of law.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed.2d 538 (1986).

"If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at

trial." Listak v. Centennial Life Ins. Co., 977 F. Supp. 739, 743 (D.S.C. 1997) (citing

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986)).

II.      Defendant is Estopped from Denying the Insolvency of Debtors

        The Trustee argues that Defendant's assertion that Debtors were not insolvent is

barred by the doctrine of *res judicata*, because the issue of Debtors' insolvency was

determined by this Court in the Prior Litigation between the Trustee and Defendant. "Under

the traditional rubric of *res judicata*, once a matter—whether a claim, an issue, or a fact—

has been determined by a court as the basis for a judgment, a party against whom the claim,

issue, or fact was resolved cannot relitigate the matter.  Judicial efficiency and finality have

demanded such a policy." In re Microsoft Corporation Anti-Trust Litigation, 355 F.3d 322,

325 (4th Cir. 2004).  The doctrine of collateral estoppel, which is also known as "issue

preclusion," is a subset of the doctrine of *res judicata*, and is a narrower concept.  See id. at

325-26; In re Varat Enterprises Inc., 81 F.3d 1310, 1315 (4th Cir. 1996) ("Issue preclusion is

more narrow and applies when the later litigation arises from a different cause of action.")

"Issue preclusion operates to bar subsequent litigation of those legal and factual issues

common to both actions that were 'actually and necessarily determined' by a court of

competent jurisdiction in the first litigation." Orca Yachts, L.L.C. v. Mollicam, Inc., 287

F.3d 316, 318 (4th Cir. 2002) (quoting Varat, 81 F.3d at 1315).  Since the breach of contract

claim at issue in this adversary proceeding is different than the breach of fiduciary duty and

unlawful distribution claims at issue in the Prior Litigation, collateral estoppel is the relevant

concept to apply in this proceeding.  To bar Defendant from raising the issue of the

insolvency of the Debtors in this adversary proceeding on the basis of collateral estoppel, the

Trustee must establish: "(1) the issue to be precluded is identical to the issue already

litigated, (2) the issue was actually determined in the prior proceeding, (3) the determination of the issue was an essential part of the decision in the prior proceeding, (4) the prior judgment was final and valid, and (5) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue." See In re Coleman, 426 F.3d 719, 729 (4th Cir. 2005).

During the hearing, both the Trustee and Defendant appeared to argue that the applicable definition of insolvency for purposes of deciding this issue was the Bankruptcy Code definition provided in 11 U.S.C. § 101(32). However, the determination of insolvency in the Prior Litigation was governed by the state law definition of insolvency for limited liability companies set forth in S.C. Code Ann. § 33-44-406, not the Bankruptcy Code definition. The Trustee's Complaint in this adversary proceeding likewise alleges a state law cause of action, which means the state law definition of insolvency should similarly apply. See Pereira v. Farace, 413 F.3d 330 (2nd Cir. 2005) (applying Delaware state law to determine insolvency of corporation for purposes of Trustee's state law breach of fiduciary duty claims); Carrieri v. Jobs.com Inc., 393 F.3d 508, 529 (5th Cir. 2004) (finding that the determination of whether a stock redemption was proper was governed by whether the debtor corporation was insolvent under Texas corporate law, not the Bankruptcy Code).

In the Prior Litigation, the Trustee obtained a judgment against Defendant finding that he breached his fiduciary duties to Debtors and violated § 33-44-406 by causing Debtors, *while insolvent*, to make distributions to Defendant from 2004 to 2011 (the "Period of Insolvency"). S.C. Code Ann. § 33-44-406 sets forth a statutory test for "insolvency."[3]

---

[3] The Reporters Comment to S.C. Code § 33-44-406 provides that "[d]istributions are improper if the company is insolvent under subsection (a) at the time the distribution is measured under subsection (c)." Subsection (c) provides that the insolvency determination is made as of the date money or property is transferred or debt is

Under that section, a limited liability company is insolvent and may not make a distribution if:

>    (1)  the limited liability company would not be able to pay its debts as they become due in the ordinary course of business; *or*

>    (2) the company's total assets would be less than the sum of its total liabilities plus the amount that would be needed, if the company were to be dissolved, wound up, and terminated at the time of the distribution, to satisfy the preferential rights upon dissolution, winding up, and termination of members whose preferential rights are superior to those receiving the distribution.

>    S.C. Code Ann. § 33-44-406(a)(1)-(2) (emphasis added).[4]

In rendering its judgment in the Prior Litigation between the Trustee and Defendant, the Court made a determination that the Debtors were insolvent from 2004 through 2012 under state law. The insolvency of the Debtors was a necessary and essential issue in the Prior Litigation and was admitted by Defendant in his Answer and in his Objection to the Trustee's motion for summary judgment filed in that proceeding.  The prior judgment is final and has not been appealed or challenged by Defendant. In the Court's view, the issue of the insolvency of the Debtors for purposes of this adversary proceeding is identical to the insolvency issue decided in the Prior Litigation.  The Trustee's breach of contract cause of action also arises under state law and thus the same state law definition of insolvency for limited liability companies would apply.

Defendant asserts that when he admitted the Debtors were "insolvent" in the prior adversary proceeding, he understood that to mean that the Debtors' liabilities exceeded the

---

incurred by the company in the case of a distribution by purchase, redemption, or other acquisition of a distributional interest in the company. § 33-44-406(c).
[4] Section 33-44-406 (a)(1) contains what is often referred to as the "equity insolvency test," and § 33-44-406(a)(2) contains what is often referred to as the "balance sheet test" for insolvency. See S.C. Code Ann. § 33-44-406 S.C. Reporter's cmt. 1072 (stating that "[t]he application of the equity insolvency and balance sheet tests present special problems in the context of the purchase, redemption, or other acquisition of a company's distributional interests").

book value of their assets. Relying on the definition of insolvency set forth in 11 U.S.C. § 101(32), Defendant argues that insolvency exists only when a company's liabilities exceed the fair market value of a company's assets, not when the liabilities exceed the book value of the assets. He further argues that the Debtors' liability as a result of the settlement of a large class action lawsuit, which ultimately caused the companies to become insolvent, was not finalized with a judgment until 2008 and was on the financial statements as merely a contingent liability from 2004 until the judgment was entered.

The Court notes that the definition of insolvency under the Bankruptcy Code, which is commonly referred to as the "balance sheet insolvency,"[5] is essentially the same as the second part of the test provided in S.C. Code Ann. § 33-44-406(a)(2), which provides that the company is insolvent if its total assets would be less than the sum of its total liabilities. See 11 U.S.C. § 101(32) (defining "insolvent" as the "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation...."). Section 33-44-406(b) further provides that the limited liability company may base its determination that a distribution is not prohibited (i.e., that a company is solvent) based upon financial statements prepared on the basis of accounting practices and principles that are reasonable in the circumstances or *on a fair valuation* or other method that is reasonable in the circumstances. See S.C. Code. Ann. § 33-44-406. In the Prior Litigation, the Court specifically determined that Defendant's authorization of member distributions to himself was unlawful under the second part of the test set forth in § 33-44-406(a)(2) because Debtors' "liabilities exceeded the value of their assets, even without considering additional liabilities which might have been incurred during dissolution." Vieira v. Harris (In re JK

---

[5] See In re Poseidon Pool & Spa Recreational, Inc., 443 B.R. 271, 280 (E.D.N.Y. 2010) ("The Bankruptcy Code definition of insolvency [under 11 U.S.C. § 101(32)(A)] is commonly referred to as 'balance-sheet insolvency' and requires a party to show that the company's liabilities exceeded its assets.")

<u>Harris & Co.</u>), C/A No. 11-6254-JW, Adv. Pro. No. 12-80152-JW, slip op. at 9 (Bankr. D.S.C. Aug. 9, 2012).

     The Complaint in the Prior Litigation did not indicate or specify that the Trustee's allegation of Debtors' insolvency was based upon a "book valuation" of the assets. Rather, the Trustee alleged in paragraph 15 and 16 of the Amended Complaint that "[t]he Debtors have been insolvent consistently from 2004 until the Conversion Date (the "Period of Insolvency")" and that "[a]t the Meeting of Creditors, Harris testified that the Debtors had been insolvent since 2004 and that the value of their liabilities exceeded the value of their assets consistently during the Period of Insolvency." Defendant had a full and fair opportunity to dispute the insolvency of the Debtors in his Answer, however, his response to each of these allegations was simply "Defendant admits." He did not clarify or qualify his admission and did not indicate in his Answer the definition of insolvency upon which his admission was based. He also did not raise the issue of the contingency of any liabilities in the Prior Litigation, and does not dispute that he was fully aware of the company's financial position at all times during the Period of Insolvency.  Defendant had a multiple opportunities to contest the insolvency of the Debtors in that litigation, but instead admitted in both his Answer and his Objection to the Trustee's Motion for Summary Judgment that the Debtors were insolvent from 2004 through 2012.  Defendant's claim that he misunderstood the definition of insolvency to which he was admitting in the Prior Litigation is not sufficient grounds to allow him to dispute insolvency in this proceeding. <u>See</u> <u>In re Estate of Holden</u>, 539 S.E.2d 703, 709-10 (S.C. 2000) ("Relief [from the consequence of a mistake of law] will not be granted where the complaining party took measure to secure knowledge as to the state of the law, and being misinformed, placed himself in the prejudicial situation of which

he later complains.  Everyone is presumed to have knowledge of the law and must exercise

reasonable care to protect his interests.") By admitting the allegations in paragraph 16 and

17 of the Complaint in the Prior Litigation, which serve as the basis for relief under § 33-44-

406, Defendant has admitted that the company is insolvent under either of standards set forth

in that statute.[6]

Based on the foregoing, the Court concludes that Defendant is barred by collateral

estoppel from denying the insolvency of the Debtors in this adversary proceeding.

III.    Defendant is Bound by Equitable Estoppel to Admissions in this Litigation and Prior
        Litigation Between the Parties

The Trustee further asserts Defendant is bound by his prior statements under oath

and his admissions in the pleadings in this proceeding and in the Prior Litigation that the

Debtors were insolvent during the relevant period. The Court views the Trustee's argument

as an equitable estoppel argument.   As stated by the Fourth Circuit in In re Varat

Enterprises, Inc.,

> The doctrine of equitable estoppel allows "a person's act, conduct or
> silence when it is his duty to speak," to preclude him from asserting a right
> he otherwise would have had against another who relied on that voluntary
> action. BLACK'S LAW DICTIONARY 538; see also Federal Deposit Ins.
> Corp. v. Jones, 846 F.2d 221, 234 (4th Cir. 1988) (quoting Dickerson v.
> Colgrove, 100 U.S. 578, 580, 25 L.Ed. 618 (1879)). The rule "is designed
> to protect any adversary who may be prejudiced by the attempted change
> of position." Guinness PLC v. Ward, 955 F.2d 875, 899 (4th Cir.1992).
> The doctrine applies in the bankruptcy context when four criteria are met:
> 1) the party estopped knew the relevant facts; 2) the party estopped
> intended for its conduct to be acted or relied upon, or the party acting had
> the right to believe the conduct was so intended; 3) the party acting was
> ignorant of the true facts; and, 4) the party acting relied on the conduct to
> its injury. In re Heritage Hotel Partnership I, 160 B.R. 374, 378 (B.A.P.
> 9th Cir. 1993); In re Burkey Lumber Co. of Grand Junction, Colo., 149

---

[6] Moreover, even if the Bankruptcy Code test were the proper test for insolvency in this adversary proceeding,
Defendant admitted during the Debtors' § 341 meetings for the underlying bankruptcy cases that the
companies were insolvent in 2006 and 2007 (the time of the stock redemptions), under the "balance sheet" test
provided by the Bankruptcy Code.

> B.R. 177, 180 (Bankr.D.Colo.1993); see also In re Momentum
> Manufacturing Corp., 25 F.3d 1132, 1136 (2nd Cir.1994).

81 F.3d 1310, 1317 (4th Cir. 1996).

Defendant has admitted the insolvency of the Debtors in his pleadings in the Prior Litigation and during the § 341 meeting of the Debtors. He is a sophisticated businessman who successfully ran the business of the Debtors for many years before they became insolvent in 2004. The Trustee has relied on Defendant's prior admissions for purposes of filing this adversary proceeding and relied on those admissions in the Prior Litigation. There is no indication, in the pleadings or otherwise, that the Trustee was aware at any time prior to the filing of Defendant's objection to the Motion in this adversary proceeding that Defendant believed he was admitting only that the companies' liabilities exceeded the book value of their assets.

Based on the foregoing, the Court finds that Defendant is barred by equitable estoppel from disputing the insolvency of the Debtors. As discussed above, the state law standard for insolvency applied in the Prior Litigation would similarly apply in this adversary proceeding since the Trustee's cause of action for breach of contract is a state law cause of action and the issue of whether the stock redemption was effective to satisfy Defendant's obligation under the Loan would necessarily depend upon whether the stock redemption was a proper distribution under S.C. Code § 33-44-406. It would be inequitable and inconsistent with the Court's final, unappealed judgment in the prior adversary proceeding to allow Defendant to change his position on this issue for purposes of this adversary proceeding.

## CONCLUSION

Based on its conclusion that Defendant is bound by collateral estoppel to the Court's prior determination of insolvency and equitable estoppel to his admissions that the Debtors were insolvent from 2004 through 2012,[7] the Court concludes that Defendant's attempt to satisfy the Loan through a stock redemption in Holding was ineffective to satisfy Defendant's obligations under the Loan since the stock had no value at the time of the redemption.[8] See In re Roco Corp., 701 F.2d 978 (1st Cir. 1983) (finding that a corporation received nothing of value in a stock redemption because the corporation was insolvent); Schafer v. Hammond, 456 F.2d 15 (10th Cir. 1972) (holding that the transfer of stock in an insolvent corporation did not constitute fair consideration to support conveyance of property to its stockholder).

Based upon the foregoing and since the sole issue raised by Defendant as a genuine issue of material fact was whether the Debtors were insolvent at the time of the stock redemption in 2006 and 2007, the Court finds that there are no genuine issues of material fact and that the Trustee is entitled to judgment as a matter of law.  Therefore, it is hereby ORDERED that:

1.  The Trustee's Motion is granted;

2.  Defendant's Objection to the Trustee's Motion is overruled; and

---

[7] In light of the Court's conclusion that Defendant is barred by collateral estoppel and equitable estoppel from disputing the insolvency of the Debtors in this adversary proceeding, Defendant is thus barred from presenting evidence to contradict the insolvency of the Debtors. Therefore, the Court will not consider the Jacobson Letter for purposes of deciding the Trustee's Motion, since it was presented by Defendant for the purpose of demonstrating that the Debtors were not insolvent at the time of the stock redemption.  The Court further finds that it is unnecessary to determine at this time whether the Jacobson Letter is inadmissible for any of the other reasons articulated by the Trustee, including hearsay, failure to properly authenticate the document, and lack of probative value.  However, were the Court to consider the Jacobson Letter, it would question whether it is a dependable indicator of value due to its contingent and non-binding nature, the fact that the transaction discussed therein was never consummated, and the fact that the Letter appears to only discuss the value of JK Harris, not Holding or the other affiliated companies.

[8] Since the Court concludes that the stock had no value, it is unnecessary to determine whether Holding's redemption of Defendant's stock in Holding provided a benefit to JK Harris.

3. Judgment is entered in the Trustee's favor against Defendant in the amount of $3,246,609.28, with compound interest accruing monthly from May 31, 2012, at the prime rate quoted in the Wall Street Journal, determined as of the first business day of each month.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**12/12/2012**



Chief US Bankruptcy Judge
District of South Carolina

Entered: 12/12/2012